UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X   Case No.
RICARDO LORI,

                      Plaintiff,   **COMPLAINT**

         -against-

GROOP INTERNET PLATFORM, INC.,   Plaintiff Demands a
individually and d/b/a TALKSPACE,   Trial by Jury

                      Defendant.
------------------------------------------------------------X

Plaintiff, by and through his attorneys, PHILLIPS & ASSOCIATES, PLLC, hereby complains of the Defendant, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, *et seq.* ("ADA") and to remedy violations of the New York Executive Law and the Administrative Code of the City of New York based upon the supplemental jurisdiction of this Court pursuant to *Gibbs*, 38 U.S. 715 (1966) and 28 U.S.C. §1367, seeking damages to redress the injuries Plaintiff has suffered as a result of being harassed and discriminated against by his employer on the basis of his disability and/or perceived disability, together with failure to accommodate, failure to engage in the interactive process and unlawful termination.

## JURISDICTION AND VENUE

1. The Court has jurisdiction pursuant to 42 U.S.C. § 2000e, *et seq.*, 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction thereto.

2. This action involves a Question of Federal Law.

3.  Venue is proper in this district based upon the fact that a substantial part of the events and omissions giving rise to the claim occurred within the Southern District of New York. 28 U.S.C. § 1391(b).

4.  On or about May 3, 2019, Plaintiff received a Notice of Right to Sue Letter from the EEOC.

5.  This action is being brought within ninety (90) days of the Notice of Right to Sue letter.

## PARTIES

6.  Plaintiff is a male resident of the State of New York, County of Queens.

7.  At all times material, Defendant GROOP INTERNET PLATFORM, INC., individually and d/b/a TALKSPACE (hereinafter "TALKSPACE"), was and is a foreign corporation duly incorporated under the laws of the State of Delaware.

8.  At all times material, Defendant TALKSPACE was and is a foreign corporation duly authorized to conduct business in the State of New York.

9.  At all times material, Defendant TALKSPACE was and is a foreign corporation which does conduct business in the State of New York.

10. At all times material, Defendant TALKSPACE was and is an online and mobile company which connects mental health professionals with people seeking mental health therapy through its proprietary computer application or "Talkspace app."

11. Defendant TALKSPACE has a principal place of business located at 33 West 60th Street, 8th Floor, New York, NY 10023.

12. At all times material, Plaintiff was an employee of TALKSPACE.

## MATERIAL FACTS

13. In or around May 2016, Plaintiff was hired by Defendant TALKSPACE to the position of

"Customer Support."

14. Prior to Plaintiff's employment by Defendant TALKSPACE, and continuing through his entire employment period, Plaintiff was a regular user of the Talkspace app. Plaintiff used the Talkspace app to connect with the company's clinicians and therapists to treat his chronic depression and anxiety.

15. Defendant TALKSPACE was fully aware of Plaintiff's disability at the time it hired him and throughout his entire period of employment.

16. Throughout his employment, there were no issues with Plaintiff's job performance.

17. Defendant TALKSPACE acknowledged Plaintiff's good job performance by giving him several salary increases and by assigning him more important responsibilities over time. Plaintiff eventually became the main contact person for therapist support in the company, meaning it was his job to guide the company's therapists and clinicians on how to use Talkspace's platform.

18. In or around the beginning of October 2018, Defendant TALKSPACE announced that, starting in January 2019, all customer support employees would be converted from salaried employees to hourly employees. As part of these unexpected changes, the company would track the employees' time, including time for bathroom and coffee breaks, by use of a permanent clock on their computer screens. In addition, the employees would lose the ability to have flexible work schedules and work from home.

19. Plaintiff was advised that these changes would also apply to him, although his role had, by this time, evolved into a "team lead"-type position. In addition to his other responsibilities, Plaintiff was training new customer support hires, writing manuals and preparing a knowledge database for the entire department.

20. Plaintiff began to experience severe symptoms of depression and anxiety stemming from the planned changes to the terms and conditions of his employment, together with the stress of his increased workload (which had not come with an increased salary or a title change). For example, Plaintiff was anxious and fearful that he would not be able to work effectively if he had to constantly monitor his time and if he could no longer work from home if his anxiety flared up.

21. On or about November 5, 2018, Plaintiff reached out to Roni Frank ("Frank"), one of the company's cofounders. Plaintiff expressed that he loved working for the company but was concerned that he was being asked to take on a lot of responsibility without receiving any change in his title, any promotion and/or more salary. Frank stated she would look into the issue.

22. The next day, Plaintiff was summoned to a meeting with his supervisor, Rich Lorenzo ("Lorenzo"), and the company's attorney, John Reilly ("Reilly"). Reilly chastised Plaintiff for contacting Frank directly, stating that he had violated the "chain of command." Reilly told Plaintiff not to bother Frank with his work concerns anymore. Reilly then criticized Plaintiff's demeanor in the workplace, telling him that he needed to "**stop moping around and looking so depressed**." Plaintiff was shocked at this callous comment.

23. However, Reilly acknowledged the company's responsibility to provide Plaintiff with medical accommodations in the future if he needed them.

24. Lorenzo objected to the idea of accommodating Plaintiff, asking "**why do we have to do all this stuff for him? I've never had to do this with anyone else I've worked with**."

25. Later that day, Lorenzo led a meeting of the customer support department to discuss the planned timekeeping and work flexibility changes. Most of the team was extremely upset.

At the end of the meeting, Plaintiff suggested that one of the company's clinicians could conduct a team building exercise with the group to increase their morale. Lorenzo agreed and permitted Plaintiff to pursue the idea.

26. Plaintiff then contacted of the company's clinical team to inquire whether they would be interested in conducting a team building session with the customer service department. Two of the clinicians recommended that Plaintiff obtain consent from Frank to move forward with the team building session.

27. On or about November 9, 2018, Plaintiff contacted Frank via the company's internal messaging app to ask her permission for Iris to conduct a team building exercise. Plaintiff was careful not to discuss his own work issues or concerns.

28. On the next work day, November 13, 2018, Plaintiff notified Lorenzo that he would be working from home due to anxiety. Lorenzo did not respond.

29. On or about November 14, 2018, Defendant TALKSPACE terminated Plaintiff's employment.

30. Defendant TALKSPACE's stated reason for terminating Plaintiff's employment was that he had contacted Frank again to discuss his work concerns. However, this reason was pretextual and false. Plaintiff did not discuss his work concerns with Frank in their second interaction.

31. Defendant TALKSPACE's actual reason for terminating Plaintiff's employment was that the company perceived that Plaintiff was unable to handle a stressful work environment because he suffers from depression and anxiety and/or that Plaintiff would need medical accommodations for these disabilities in the future.

32. At the termination meeting, Reilly told Plaintiff that he had consulted with the company's clinical staff regarding Plaintiff's mental health and his possible need for accommodations in

the future. Reilly stated that the clinical staff told him that Plaintiff "wouldn't make it," meaning that Plaintiff would not be able to cope with the upcoming changes to the work environment without significant accommodations.

33. Defendant TALKSPACE terminated Plaintiff's employment because of his disability and/or perceived disability.

34. Defendant TALKSPACE terminated Plaintiff's employment to avoid having to provide him with medical accommodations in the future.

35. Defendant TALKSPACE failed to engage in the interactive process.

36. As a result of Defendant's actions, Plaintiff felt humiliated, degraded, victimized, embarrassed and emotionally distressed.

37. As a result of Defendant's discriminatory and intolerable treatment of Plaintiff, he suffered severe emotional distress and physical ailments.

38. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff and has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

39. As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against the Defendant.

### AS A FIRST CAUSE OF ACTION
### UNDER FEDERAL LAW
### <u>DISCRIMINATION</u>

40. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

41. Plaintiff claims Defendant violated the ADA, as amended, 42 U.S.C. § 12101, et seq.

42. Title 42 of the ADA, Chapter 126, Subchapter I, § 12112, Discrimination [§ 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

43. Defendant engaged in an unlawful discriminatory practice by discriminating against Plaintiff on the basis of his disability and/or perceived disability, together with failure to accommodate, failure to engage in the interactive process and unlawful termination.

44. As such, Plaintiff has been damaged as set forth herein.

### AS A SECOND CAUSE OF ACTION
### UNDER STATE LAW
### DISCRIMINATION

45. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

46. Executive Law 296 provides that "1.  It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's … disability and/or perceived disability … to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

47. Defendant engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of his disability and/or perceived disability, together with failing to engage in the interactive process and unlawful termination.

48. Plaintiff hereby makes a claim against Defendant under all the applicable paragraphs of

Executive Law Section 296.

### AS A THIRD CAUSE OF ACTION
### UNDER STATE LAW
### FAILURE TO PROVIDE A REASONABLE ACCOMMODATION

49. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

50. New York State Executive Law §296(3)(a) provides:

    "It shall be an unlawful discriminatory practice for an employer, licensing agency, employment agency or labor organization to refuse to provide reasonable accommodations to the known disabilities of an employee, prospective employee or member in connection with a job or occupation sought or held or participation in a training program."

51. Defendant engaged in an unlawful discriminatory practice by discriminating against the Plaintiff by failing to provide a reasonable accommodation, and by failing to engage in the interactive process.

### AS A FOURTH CAUSE OF ACTION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### DISCRIMINATION

52. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

53. The Administrative Code of the City of New York, Title 8, §8-107 [1] provides that "It shall be an unlawful discriminatory practice: For an employer or an employee or agent thereof, because of the actual or perceived … disability and/or perceived disability … of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

54. Defendant engaged in an unlawful discriminatory practice in violation of New York City

Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff on the basis of his disability and/or perceived disability, together with failing to accommodate and failing to engage in the interactive process.

### AS A FIFTH CAUSE OF ACTION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### FAILURE TO PROVIDE A REASONABLE ACCOMMODATION

55. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

56. The Administrative Code of the City of New York §8-107(15)(a) provides:

    "[A]ny person prohibited by the provisions of this section from discriminating on the basis of disability shall make reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity."

57. Defendant engaged in an unlawful discriminatory practice in violation of the New York City Administrative Code §8-107(15)(a) by failing to provide a reasonable accommodation, and by failing to engage in the interactive process.

**WHEREFORE,** Plaintiff respectfully requests a judgment against the Defendant:

A. Declaring that the Defendant engaged in an unlawful employment practice prohibited by the ADA, the New York State Executive Law and the Administrative Code of the City of New York, and that the Defendant discriminated against Plaintiff on the basis of his disability and/or perceived disability, together with failure to provide a reasonable accommodation, failing to engage in the interactive process, and unlawful termination;

B. Awarding damages to the Plaintiff, for all lost wages and benefits, past and future, back pay and front pay and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action;

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE,** Plaintiff demands judgment against Defendant in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: New York, New York
      June 21, 2019                        **PHILLIPS & ASSOCIATES, PLLC**

                                        By: */s/ Steven Siegler*
                                             Steven Siegler, Esq.
                                             *Attorneys for Plaintiff*
                                             45 Broadway, Suite 620
                                             New York, NY 10004
                                             Tel: 212-248-7431
                                             Fax: 212-901-2107
                                             Email: ssiegler@tpglaws.com